## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

NO. 5:06-CV-139-FL(3)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| $32,120.00.00 IN US CURRENCY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| CHRISTOPHER J. RAKES, | ) | |
| | ) | |
| Claimant. | ) | |
| _____ | ) | |

This cause comes before the Court upon the Government's Motion for Summary Judgment [DE-26]. Claimant has failed to respond to this motion and the time for doing so has expired. Accordingly, the motion is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1) this matter is before the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is HEREBY RECOMMENDED that the Government's Motion for Summary Judgment [DE-26] be GRANTED.

## I. Background

The instant matter is a civil action in which the Government seeks the forfeiture of United States currency pursuant to 21 U.S.C. § 881(a)(6). On October 10, 2005, North Carolina Highway Patrol Trooper J.E. Clark made a traffic stop of a 2005 Chevrolet Suburban driven by Claimant along Interstate 95 in Johnston County, North Carolina [DE

27-3, pg. 1]. The stop was initiated because Claimant was not complying with the mandatory

seatbelt law [DE 27-3, pg. 1]. Two passengers were in the vehicle with Claimant, one in the

front seat and the other in the back [DE 27-3, pg. 1]. Trooper Clark requested Claimant's

driver's license and registration information. [DE 27-3, pg. 1]. Claimant provided Trooper

Clark a Massachusetts driver's license that falsely identified Claimant as "Peter Rakes." [DE

27-3, pg. 1]. Furthermore, Claimant admitted that he was not wearing his seatbelt [DE 27-3,

pg. 1]. Thereafter, Trooper Clark requested that Claimant exit the vehicle and accompany

him to his patrol vehicle [DE 27-3, pg. 2]. Prior to Claimant being seated in the patrol

vehicle, Trooper Clark conducted a consensual weapons frisk of Claimant's person [DE 27-3,

pg. 2]. During this search, Trooper Clark discovered a large bundle of twenty dollar bills

bulging from Claimant's pocket [DE 27-3, pg. 2]. When asked by Trooper Clark, Claimant

indicated that he thought the bundle totaled $1,500.00 [DE 27-3, pg. 2]. This currency was

not seized [DE 27-3, pg. 2].

After Claimant was seated in the patrol vehicle, Trooper Clark contacted Trooper A.R.

Digiovanni via his patrol radio and requested assistance with the traffic stop [DE 27-3, pg.

2]. While waiting for Trooper Digiovanni, Trooper Clark issued Claimant a citation for

failure to wear a seatbelt [DE 27-3, pg. 2]. When Trooper Digiovanni arrived, Trooper Clark

obtained Claimant's verbal and written consent to search the rental car [DE 27-3, pg. 2].

Trooper Digiovanni retrieved his assigned canine for the purpose of conducting a narcotic

sniff of the vehicle. The canine was walked around the exterior of the vehicle [DE 27-3, pg.

2]. During this time Trooper Digiovanni observed the canine stop and scratch on the rear

2

cargo door [DE 27-3, pg. 2]. The canine was then placed inside the vehicle and once again stopped and scratched on the rear cargo door [DE 27-3, pg. 2]. Furthermore, the canine also alerted to the luggage inside the vehicle.

Trooper Clark, and recently arrived Trooper S.T. Eller then searched the vehicle by hand and located a large amount of United States currency inside two pieces of luggage [DE 27-3, pg. 2-3]. The currency was bound together with rubber bands and brown paper bags. [DE 27-3, pg. 3]. Based on the discovery of the large amount of currency, the vehicle was driven to the patrol office for further search [DE 27-3, pg. 3]. The currency was placed in a large evidence bag and secured at the patrol office [DE 27-3, pg. 3]. During the search at the patrol office, Trooper Clark located a small chunk of methamphetamine [DE 27-3, pg. 3]. He also located identification revealing Claimant's true identity as Christopher J. Rakes of Arlington, Massachusetts [DE 27-3, pg. 3]. Claimant was then advised of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). After being advised of these rights, Claimant stated that the methamphetamine was his and was for his personal use [DE 27-3, pg. 3].

Trooper Clark also spoke with the passengers regarding the currency discovered. Ryan McMasters (the front seat passenger) stated that a portion of the currency–$30,800–was his life savings and that he intended to invest in real estate in Miami, Florida [DE 27-3, pg. 3]. Derek McMasters (the rear seat passenger) stated that he had no knowledge of the currency being in the vehicle [DE 27-3, pg. 3]. The two passengers were released without criminal charges [DE 27-3, pg. 3].

3

Trooper DiGiovanni also used his canine to perform a line-up on the currency seized by placing both sets of currency (the $32,120 at issue and the $30,800 claimed by Ryan McMasters) in two of four identical boxes placed on the floor. The canine alerted to both boxes containing currency as having the odor of narcotics. [DE 27-7]. The currency was eventually converted into two money orders [DE 27-3, pg. 3]. Claimant made an administrative claim for $32,120 of these funds on December 28, 2005. [DE-27, pg. 5]. The amount claimed by Claimant had a denomination breakdown as follows: 18 $100 dollar bills, 20 $50 dollar bills, 1,440 $20 dollar bills, 48 $10 dollar bills, and 8 $5 dollar bills. The second set of currency ($30,800) is no longer at issue because Ryan McMasters defaulted in a related forfeiture action [DE-27, pg. 5].

Claimant was charged with felony possession of a schedule II controlled substance (methamphetamine), presenting a fictitious license, and failure to wear a seatbelt [DE 27-3, pg. 3]. He pled guilty to and was convicted of felony possession of a schedule II controlled substance on December 8, 2005, in state district court in Johnston County [DE 27-12]. The Drug Enforcement Administration proceeded with an administrative forfeiture, sending a notice of seizure in accordance with 21 C.F.R. Part 9. A Complaint was filed on March 28, 2006, seeking forfeiture of $32,120 in currency pursuant to 21 U.S.C. § 881(a)(6) [DE-1]. The Court conducted an *ex parte* review of the Complaint and supporting Declaration and entered an Order finding probable cause and directing the Clerk to issue a Warrant of Arrest In Rem on May 6, 2006 [DE-2]. Claimant was served with the Complaint, and filed an untimely answer on June 21, 2007[DE-19].

4

## II. Analysis

In a civil forfeiture action, the Government bears the burden of proving by a preponderance of the evidence that the currency is subject to forfeiture, either as proceeds of an illegal drug transaction, or as intended for use in an illegal drug transaction. 18 U.S.C. § 983(c). Specifically, the Government must show that there is a "substantial connection" between the currency and a drug offense. 18 U.S.C. § 983(c)(3).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.
> Celotex Corporation v. Catrett, 477 U.S.317, 322-323 (1986)

"[S]ummary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 317; Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Specifically, the moving party bears the burden of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" that the moving party believes demonstrate an absence of any genuine issues of material fact. Celotex, 477 U.S. at 323. Once the

moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue which requires trial. Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). As a general rule, the non-movant must respond to a motion for summary judgment with affidavits, or other verified evidence, rather than relying on his complaint or other pleadings. Celotex, 477 U.S. at 324. See also, Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

In the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-movant. Anderson, 477 U.S. at 255. It is well-established that any analysis of the propriety of summary judgment must focus on both the materiality and genuineness of the fact issues. Ross, 759 F.2d at 364. The mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. Anderson, 477 U.S. at 247-48. A fact is material only when its resolution affects the outcome of the case. Id. at 248. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

This Court has recognized that summary judgment is appropriate in civil forfeiture actions if a preponderance of the evidence establishes that the currency is subject to forfeiture and the defendant fails to create an issue of material fact by affirmative evidence. See, United States v. $50,720 in U.S. Currency, Case No. 5:07-CV-243-BO. ( granting summary judgment based on incriminating circumstantial evidence, including drug dog alert, unusually large quantity of currency, suspicious denomination breakdowns, currency concealment, and

6

false, conflicting, and implausible statements). As noted above, the non-movant must respond to a motion for summary judgment with affidavits, or other verified evidence, rather than relying on his complaint or other pleadings. Celotex, 477 U.S. at 324. See also, Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Because claimant has not responded to the instant motion, it could be granted on that basis alone.

Moreover, The Court has already entered a finding that the Government has established a "reasonable basis" for the forfeiture of the property, and none of the information relied on by the Court in reaching that determination has been put in issue by Claimant [DE-2]. Likewise, the Government has demonstrated the existence of several factors relied upon by Courts in determining whether forfeiture of currency seized in a traffic stop is appropriate. Specifically, the Government has noted: 1) the existence of a positive drug dog alert initially and in a lineup; 2) the sheer quantity of currency, which would be highly unusual for an ordinary traveler to possess; 3) the false identification presented by Claimant; 4) the concealment of the currency; 5) the unusual denomination breakdown of the currency and the fact that it was bound together in rubber bands (rather than bank method); 6) Claimant's travel along a known corridor for illegal drugs to a known source city for illegal drugs; 7) the presence of methamphetamine at Claimant's arrest; and 8) Claimant's eventual conviction for possession of methamphetamine This evidence, when considered in its totality, proves by a preponderance of the evidence that the currency at issue is subject to forfeiture. United States v. $50,720 in U.S. Currency, Case No. 5:07-CV-243-BO. Again, by failing to respond to the instant motion, Claimant has failed to present an

7

issue of material fact.

### III. Conclusion

For the aforementioned reasons, it is HEREBY RECOMMENDED that the Government's Motion for Summary Judgment [DE-26] be GRANTED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 6th day of February, 2009.

_____
William A. Webb
U.S. Magistrate Judge